FILED
United States Court of Appeals
Tenth Circuit

March 22, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

TATIANA GROTENDORST,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 09-2132
(D.C. No. 1:08-CV-00628-CG)
(D. N.M.)

---

ORDER AND JUDGMENT*

---

Before **GORSUCH** and **ANDERSON**, Circuit Judges, and **BRORBY**,
Senior Circuit Judge.

---

Plaintiff-appellant Tatiana Grotendorst appeals from an order of the district

court affirming the Commissioner's decision denying her application for Social

Security disability benefits. She claims the ALJ failed to properly analyze her

mental impairments, to properly consider the credibility of her claim of disabling

---

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

back pain, and to properly develop the record with regard to that claim. We agree the ALJ failed to properly apply the law when considering Ms. Grotendorst's mental impairments. Therefore, exercising our jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand to the district court with directions to remand to the ALJ for further proceedings consistent with this order and judgment.

Appellant filed for disability benefits on June 1, 2005, claiming a combination of impairments, the main one being loss of function in her left hand from a laceration to her left wrist on November 11, 2003. She also claimed reduced function due to heel spurs, scoliosis, degenerative spine disease, asthma, and the mental impairments of anxiety, depression, and a pain disorder. The agency denied her applications initially and on reconsideration.

On March 6, 2007, appellant received a de novo hearing before an administrative law judge (ALJ). The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not

-2-

equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See Williams*, 844 F.2d at 751 n.2. If the claimant successfully meets this burden, the burden of proof then shifts to the Commissioner at step five. *See id.* at 751.

The ALJ concluded that Ms. Grotendorst had the following severe impairments at step two of the sequential evaluation: "right hip pain secondary to broken pelvis in 1986 and left wrist pain." Aplt. App., Vol. I at 15. Because, at step three, the ALJ concluded that these impairments did not meet or equal one of the listed impairments, and she then considered Ms. Grotendorst's residual functional capacity (RFC), determining she retained the RFC

> to lift and or carry 20 pounds occasionally and 10 pounds frequently with no lifting more than 5 pounds with the left upper extremity, stand and or walk about 4 hours in an 8-hour workday, sit about 4 to 6 hours in an 8-hour workday, occasionally crouch, crawl, and climb ladders or scaffolds, no repetitive fine manipulations with the left upper extremity, and no grasping forcefully or pushing and or pulling with the left upper extremity.

Aplt. App., Vol. I at 17. She found at step four that Ms. Grotendorst could not return to her past relevant work, but, at step five, that Ms. Grotendorst was not disabled because there were a significant number of other jobs which she could

-3-

perform in the national or regional economy.  The Appeals Council denied review,

making the ALJ's decision the Commissioner's final decision.  Following

affirmation by the district court, Ms. Grotendorst appealed to this court.

> Our review of the district court's ruling in a social security
> case is de novo.  Thus, we independently determine whether the
> ALJ's decision is free from legal error and supported by substantial
> evidence.  Although we will not reweigh the evidence or retry the
> case, we meticulously examine the record as a whole, including
> anything that may undercut or detract from the ALJ's findings in
> order to determine if the substantiality test has been met.

*Wall*, 561 F.3d at 1052 (quotations and citations omitted).  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)

(quotations omitted).

Ms. Grotendorst's first two points concern her mental impairment claims.

She asserts that the evidence showed the severe mental impairments of

depression, anxiety, and a pain disorder.  The ALJ explicitly concluded at step

two of the sequential evaluation that Ms. Grotendorst's anxiety and depression

were non-severe impairments; did not address the pain disorder diagnosis; and did

not provide for any limitations from mental impairments in the RFC.

Ms. Grotendorst argues that this non-severity determination was error and that the

ALJ further erred by failing to include in the RFC and, specifically, in the

hypothetical questions presented to the vocational expert (VE), a limitation on her

ability to concentrate.

We have reviewed the record in detail. It is clear that Ms. Grotendorst was diagnosed with mental impairments. Doctors from the Lovelace Sandia Health System (Lovelace) diagnosed her with anxiety and an alcohol abuse disorder. An agency examining psychiatrist later diagnosed her with major depression and a somatic pain disorder. Further, Ms. Grotendorst subjectively claimed both at the hearing before the ALJ and to other medical professionals that she had mental impairments. She asserted that she had a history of being treated for anxiety, depression, and alcoholism. She asserted that she abused alcohol when she became anxious or lonely. She also testified at the hearing that she was being treated at that time with an anti-depressant and her representative submitted the name of the anti-depressant in his post-hearing brief to the ALJ.

The ALJ made two brief assessments regarding Ms. Grotendorst's claimed mental impairments. First, at step two of the sequential evaluation, the ALJ concluded:

> The claimant has further alleged that she has anxiety and depression. However, there is no objective medical evidence of record that the claimant has been treated for anxiety or depression at any time during the relevant period under consideration. The claimant reported in March 2005 that her first contact with a mental health professional was for alcohol abuse. There is evidence that the claimant has received some treatment from Lovelace Sandia Health System; however, this treatment was for alcohol abuse. Thus the undersigned concludes that the claimants anxiety and depression are non-severe impairments.

Aplt. App., Vol. I at 16 (citations omitted).  The ALJ also concluded, in determining Ms. Grotendorst's RFC:

> As for the opinion evidence, the undersigned rejects the opinion of the State agency medical consultant wherein it was opined that the claimant has severe mental impairments.  There is no objective medical evidence of record that the claimant has a severe mental impairment for the reasons previously mentioned in the body of this decision.

*Id*. at 19.  This analysis was legally insufficient.

When confronted with a claim of mental impairment, the ALJ is required by regulation to apply a "special technique."  *See* 20 C.F.R. § 404.1520a.  The first step in that technique is to "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)."  *Id*. § 404.1520a(b)(1).  "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  *Id*. § 404.1508.

Here, it appears the ALJ determined that Ms. Grotendorst had the medically determinable mental impairments of anxiety and depression, simply because the ALJ proceeded to make severity findings as to those two impairments.[1]  Under § 404.1520a(b)(2), once medically determinable mental impairments are found,

---

[1]      If this is an incorrect reading of the decision and the ALJ's holding was that Ms. Grotendorst had *no* medically determinable mental impairments other than her alcohol addiction, that holding was erroneous considering the evidence in the record.

the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." The ALJ does this by rating the claimant's limitations in "four broad functional areas," which are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. § 404.1520a(c)(3). These ratings are then used to determine the severity of the mental impairment(s). Under the regulations,

> the [ALJ's] written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the [four broad] functional areas . . . .

*Id*. § 404.1520a(e)(2).

Here, the ALJ concluded that Ms. Grotendorst's anxiety and depression were not severe without first making the required findings regarding how limited she was in each of the four broad functional areas. Instead, the ALJ held that Ms. Grotendorst's anxiety and depression were not severe because there was "no objective medical evidence . . . that [she] ha[d] been treated for anxiety or depression at any time during the relevant period under consideration." Aplt. App., Vol. I at 16.

First, this is a misstatement of the record. Dr. Levis from Lovelace diagnosed Ms. Grotendorst with alcohol abuse disorder *and* anxiety disorder (not otherwise specified) and the progress notes from two follow-up therapy sessions

reiterate that assessment. *See id*. at 282-83, 293.[2] Those therapy sessions were "treatment." In the "PLANS" section of those progress notes, one of the goals set forth was to "Continue 1:1," *see id*. at 282-83, which we take to mean that Ms. Grotendorst was to continue one-on-one therapy sessions as part of her treatment plan.

Second, the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of *treatment* received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations. Thus, the ALJ failed to follow the regulations in reaching her determination that Ms. Grotendorst's mental limitations were not severe at step two of the sequential evaluation.

Nevertheless, an error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here

---

[2] The Axis I diagnosis was numbers 305 and 300, which represent alcohol abuse disorder and anxiety disorder (not otherwise specified), respectively. *See Am. Psychiatric Ass'n*, Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR 214, 484 (4th ed. 2000).

became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) ("We can easily dispose of . . . arguments[] which relate to the severity of [claimant's] impairments.  The ALJ . . . made an explicit finding that [claimant] suffered from severe impairments.  That was all the ALJ was required to do in that regard.  [Claimant's] real complaint is with how the ALJ ruled at step five.").  This is because *all* medically determinable impairments, severe or not, must be taken into account at those later steps.[3]

Determining whether the ALJ's error is harmless in this case brings us to Ms. Grotendorst's second point, which is that the ALJ failed to include a moderate limitation to her ability to concentrate and maintain attention in her RFC finding and in the hypothetical questions to the VE.  Here, Dr. Mellon and Dr. Chiang, both agency physicians, rated Ms. Grotendorst's ability to maintain

---

[3]     Under 20 C.F.R. § 404.1523:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

*See also* 20 C.F.R. § 404.1545(a)(2) (requiring that *all* medically determinable impairments be considered when assessing RFC).

attention and concentration for extended periods as moderately limited by her

mental impairments.[4]

An ALJ's RFC determination–which the ALJ then uses at steps four and

five of the sequential evaluation–must consider both severe and non-severe

medically determinable impairments. *See* 20 C.F.R. § 404.1545(e). Further, the

hypothetical questions posed to the VE to assist with the step-five determination

must reflect with precision all–and only–the impairments and limitations borne

out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir.

1996). Nevertheless, despite record evidence of limitations due to mental

impairments, the ALJ failed to either include those limitations in her RFC

determination and her hypothetical questions, or explain that failure. She failed

to even mention Dr. Mellon's examination in her decision, and she rejected what

she termed Dr. Chiang's "opinion . . . that the claimant has severe mental

impairments," because there had been no prior treatment of depression or anxiety.

Aplt. App., Vol. I at 19. Instead, once the ALJ decided, without properly

applying the special technique, that Ms. Grotendorst's mental impairments were

not severe, she gave those impairments no further consideration. This was

reversible error. We must therefore remand this matter so that the ALJ may

---

[4] Dr. Mellon conducted a fifty-minute consultative examination on
Ms. Grotendorst. Aplt. App., Vol. I at 209-13. Dr. Chiang, a non-examining
consulting physician, filled out a Psychiatric Review Technique (PRT) form and
a mental RFC assessment that essentially tracked Dr. Mellon's findings.
*Id*. at 214-31.

-10-

properly apply the special technique to determine Ms. Grotendorst's medically determinable mental impairments, their severity, and any functional limitations they cause.

Although we are remanding the case for proper analysis of Ms. Grotendorst's mental impairments, we shall also briefly address Ms. Grotendorst's other issues. Her next two arguments claim the ALJ failed to properly consider her lower back pain. She argues the ALJ failed to properly analyze her pain complaints under *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted). Therefore, under *Luna* we must consider (1) whether Ms. Grotendorst established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between that impairment and her subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Ms. Grotendorst's pain is in fact disabling. 834 F.2d at 163-64.

Here, the ALJ concluded: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could

reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Aplt. App., Vol. I at 19. Thus, the ALJ did not believe Ms. Grotendorst's allegations of disabling pain at step three of the *Luna* analysis. *See Thompson*, 987 F.2d at 1489 (holding that at the third step of the *Luna* analysis, "the ALJ was required to consider [the claimant's] assertions of severe pain and to decide whether he believed them" (quotation and brackets omitted)). To determine the credibility of a claimant's complaints of disabling pain, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted). Ms. Grotendorst argues that the ALJ improperly focused solely on the nature of her daily activities and that she mischaracterized those activities.

We disagree that the ALJ erred, for the simple reason that Ms. Grotendorst did not testify to a *disabling* level of back pain at the hearing. Ms. Grotendorst has limped due to a curvature of the spine for her entire life. She testified that she also had arthritis in her hip due to suffering a broken pelvis in 1986 and that she periodically has injections in her spine because she cannot sit for long. But

-12-

she testified that she had worked with these conditions, she just "[had] to be able to move around." Aplt. App., Vol. I at 313.[5] She testified that she could sit for an hour-and-a-half to two hours before her lower back started hurting, stand for the same amount of time, and walk a mile at a time.[6] *Id*. at 317-18. She was asked "when you go to pick up something, what is the problem with lifting," and she answered, "[t]he clumsiness in my left hand." *Id*. at 327. She testified that she could carry groceries, except for the heavy ones from Costco. *Id*. The ALJ's treatment of Ms. Grotendorst's claims of disabling back pain was brief because those claims were insubstantial.

In her last point, Ms. Grotendorst argues that the ALJ erred by failing to properly develop the record by obtaining the medical records of Dr. Pamela Black, who treated her for her back pain.

> In a social security disability case, the claimant bears the burden to prove her disability. To be sure, administrative disability hearings are nonadversarial and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. Further, this duty pertains even if the claimant is represented by counsel.

*Wall*, 561 F.3d at 1062-63 (citations, quotations, and ellipsis omitted).

---

[5]     Ms. Grotendorst later explained that having to be able to "move around" when sitting meant that she had to be able to shift positions in her chair. Aplt. App., Vol. I at 327.

[6]     Ms. Grotendorst specifically testified that she could walk the mile-long round-trip to her mailbox, and could probably walk farther if it were not for the altitude where she lived. *Id*. at 326.

As pointed out by respondent, Ms. Grotendorst was represented by a non-attorney representative from Action Disability Representatives. Aplt. App., Vol. I at 299. While Ms. Grotendorst identified Dr. Black as one of her physicians in her filings seeking a hearing before the ALJ, neither she nor her representative made any objection at the hearing to the lack of records from Dr. Black. Moreover, Ms. Grotendorst's representative assured the ALJ at the hearing that there were no further medical records outstanding. But there is a more important reason why the ALJ did not err by not more fully developing the record regarding Ms. Grotendorst's back problems. Because Ms. Grotendorst did not testify to any disabling *symptoms* from her back problems, there was no need to develop the record more fully regarding those back problems.

Ms. Grotendorst also briefly argues that the district court erred in failing to remand her case to the ALJ pursuant to sentence six of 42 U.S.C. § 405(g), so that Dr. Black's records could be considered.[7] She presented the records in question to the district court and they show that she received injections for her back pain in August and October of 2005 and, again, in August 2007. Dr. Black's October 20, 2005, notes stated: "[Ms. Grotendorst] is here today as a follow up for her right SI joint injection of 10/6/05. The patient has had an excellent response to the

---

[7] Sentence six of 42 U.S.C. § 405(g) reads, in pertinent part: "The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."

injection. She is pain free not only in her SI joint, but in her back as well. She is still not having any pain in her coccyx as well." *Id.*, Vol. II at 63. In her assessment, Dr. Black stated: "[t]he patient is now pain free." *Id.* The notes from August 2007–five months after the ALJ's hearing–stated that Ms. Grotendorst "reported 80% pain reduction following the [injection]." Thus, the district court committed no error because the records do not support a claim of disabling pain and were, therefore, not material. *See Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981) (holding that evidence is material if "the Secretary's decision might reasonably have been different had the [new] evidence been before him when his decision was rendered." (further quotation omitted)).

The judgment of the district court is REVERSED and REMANDED to the district court with direction that the case be remanded to the ALJ for further proceedings consistent with this opinion.

Entered for the Court


Stephen H. Anderson
Circuit Judge