**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 25, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHARON M. CARPENTER,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

        Defendant-Appellee.

No. 07-5018

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 05-CV-652-FHM)**

---

Submitted on the briefs:[*]

Richmond J. Brownson, Timothy M. White, Tulsa, Oklahoma, for
Plaintiff-Appellant.

David E. O'Meilia, United States Attorney, Tina M. Waddell, Chief Counsel,
Region VI, Linda H. Green, Special Assistant U.S. Attorney, Office of the
General Counsel, Social Security Administration, Dallas, Texas, for
Defendant-Appellee.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **HOLMES**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

Plaintiff Sharon M. Carpenter appeals from the denial of her applications for social security disability insurance and supplemental security income benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we reverse and remand for further proceedings.

**I**

Mrs. Carpenter was born on April 22, 1978. She filed applications for benefits under both Title II and Title XVI, alleging a disability beginning on July 1, 2001, due to continual back pain, but she also documented a very low IQ and other physical and mental impairments. She completed the tenth grade at school in special education classes and later took GED classes, but did not complete her GED. She has had many jobs, but did not keep any of them for more than a few months and made very little money in any of the years that she worked. Her jobs were at Pizza Hut and similar companies, acting as cashier, answering telephones, or stocking shelves. The ALJ found that Mrs. Carpenter had mild mental retardation, but that her back impairment was not severe. Admin. R., Vol. 2, at 19, 23. The ALJ decided that she had no exertional limitations, only mental restrictions, and that she was not disabled. *Id.* at 23

(findings 12, 13).  The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

Mrs. Carpenter argues on appeal that the ALJ erred at steps two, three, and five of the five-step process used to evaluate disability claims, and that the ALJ failed to discuss the evidence in her favor throughout his decision.  We have held that "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  Keeping this principle in mind, we address each of Mrs. Carpenter's arguments in turn.

**II**

A.  Step Two

Mrs. Carpenter contends the ALJ applied the wrong legal standard at step two by only considering her impairments *individually* to determine whether they were sufficiently severe to limit her ability to do basic work activities.  *See*

Admin. R., Vol. 2, at 19. As we explained in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), "[a]t step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'" *Id.* at 1123-24 (quoting 20 C.F.R. § 404.1523); *see also* 20 C.F.R. § 416.923 (parallel regulation for assessing Title XVI claims). Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.

B. Step Three

At step three, Mrs. Carpenter contends the ALJ failed to consider whether she met or equaled Listing 12.05C for mental retardation, *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), and failed to tie his conclusion that she did not meet or equal Listing 12.05D to the evidence, *see Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995). These arguments have merit. The ALJ's *Clifton* error would be harmless if findings he made elsewhere conclusively negated Mrs. Carpenter's claim under Listing 12.05C. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). That is not the case here.

## 1. Listing 12.05C

To satisfy Listing 12.05C, Mrs. Carpenter must show "a valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C. Mrs. Carpenter's full scale IQ of 65, Admin. R., Vol. 3, at 446, puts her in the specified range. We have held that "a claimant's physical impairment need not be independently disabling to meet the second prong of § 12.05C." *Hinkle v. Apfel*, 132 F.3d 1349, 1353 (10th Cir. 1997). Rather, the "decision regarding whether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard," *id.* at 1352, which is "de minimis." *Langley*, 373 F.3d at 1123 (discussing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring)). The regulations require that the claimant's impairments be considered in combination "throughout the disability determination process," which includes step three and the second prong of Listing 12.05C. 20 C.F.R. §§ 404.1523, 416.923; *see Hinkle*, 132 F.3d at 1353. Mrs. Carpenter has evidence of physical and mental impairments other than low IQ, and the ALJ improperly failed to discuss Listing 12.05C and explain why he rejected the evidence in her favor.

The record contains evidence of multiple back and neck problems which have caused Mrs. Carpenter pain, starting when she was less than two years old and continuing into adulthood. The ALJ did not acknowledge any of her medical

-5-

evidence before 2001, the year she claimed her disability began. *See* Admin. R., Vol. 2, at 16-21. This is error because the regulations require the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled," 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and this court requires the ALJ to discuss "the significantly probative evidence he rejects[,]" *Clifton*, 79 F.3d at 1010. The ALJ ignored the evidence that Mrs. Carpenter had a tumor at T-11 removed from her back when she was less than two years old ("Histiocytosis X"), that this tumor was treated like cancer, with chemotherapy and radiation, and that she was diagnosed at the age of fourteen with a mild gibbus deformity (a marked kyphosis, or hump) at T-11. *See* Admin. R., Vol. 2, at 94, 106, 107, 121, 151; Vol. 3, at 272, 297. This evidence underlies the 2004 opinion of Anil K. Reddy, M.D.—a pain specialist Board certified in physical medicine and rehabilitation—that Mrs. Carpenter suffers polyneuropathy, due to chemotherapy, and kyphosis of the spine. *See id.*, Vol. 3, at 467-68, 471. Dr. Reddy indicated that Mrs. Carpenter had an abnormal gait and could only walk unaided slowly for four blocks. *Id.* at 468. Although the ALJ mentioned Dr. Reddy's report, he did not discuss Dr. Reddy's diagnoses of polyneuropathy and kyphosis or explain why he rejected them as a source of pain that limits Mrs. Carpenter's ability to do work activities, such as walking, standing, sitting, lifting, etc. *See id.*, Vol. 2, at 18. The ALJ also did not discuss Dr. Reddy's opinion that Mrs. Carpenter's ability to walk is limited. *See id.*

The magistrate judge stated that it was unnecessary for the ALJ to say more about Dr. Reddy's opinion because it was a checklist, which this court held in *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), does not constitute substantial evidence unless the checkmarks are supported "by thorough written reports or persuasive testimony[.]" *See* Admin. R., Vol. 1, at 147. In *Frey*, however, we dealt with a nontreating physician's checkmarks on the agency's RFC form "based on the most limited sort of contact and examination. There [was] no indication of careful study of [the claimant's] history or prior examinations; the report even misstates [the claimant's] name." 816 F.2d at 515. In contrast, Dr. Reddy examined Mrs. Carpenter and made notes or circled the medical terms for her findings on her own medical form clearly set up to record the results of a thorough physical examination; it was not the agency's checklist RFC form. *See* Admin. R., Vol. 3, at 467-71.

The magistrate judge also stated the ALJ properly resolved the conflict between Dr. Reddy's opinion that Mrs. Carpenter has painful back impairments and the opinion of Moses A. Owoso, M.D. that her back was normal. Admin. R., Vol. 1, at 148. The ALJ seemed to favor Dr. Owoso's opinion that Mrs. Carpenter gave "a vague history of 'a tissue' being removed from her back in infancy[,]" but that the scar on her back was inconsistent with spinal surgery. *See* Admin. R., Vol. 2, at 18; Vol. 3, at 438, 440. Dr. Owoso's opinion is contradicted, however, by Mrs. Carpenter's childhood medical history, which

shows that she underwent surgery, chemotherapy, and radiation to remove a tumor from her spine.

In any case, the ALJ did not reject Dr. Reddy's report because it was a checklist or because Dr. Owoso's opinion outweighed it—he simply did not discuss all of Dr. Reddy's diagnoses or explain how he reached his conclusions. The magistrate judge's (and appellee's) post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *See Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004). Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (per curiam).

The ALJ also disregarded the evidence from Mrs. Carpenter's chiropractor, Frank J. Ungerland, D.C., that she is "challenged in her daily activities such as washing, bending, lifting, dressing, and taking care of her children[,]" due to her neck, shoulder, and lower back injuries, and that her pain will be permanent and worsen over time. *See* Admin. R., Vol. 2, at 20; Vol. 3, at 465-66. Although a chiropractor is not an "acceptable medical source" for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an "other source" is relevant to the questions of *severity* and *functionality*. *See Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007) (discussing S.S.R.

-8-

06-03p, 2006 WL 2329939, at *4-*6). The ALJ was not entitled to disregard the "serious problems" set out in Dr. Ungerland's opinion simply because he is a chiropractor. *See* Admin. R., Vol. 2, at 20.

The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication. *See id.*; *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

For the above reasons, the ALJ erred by failing to discuss Listing 12.05C, and his findings elsewhere in his decision are inadequate to render that error harmless by unambiguously negating Mrs. Carpenter's claim to satisfy the elements of that listing. *Cf. Fischer-Ross*, 431 F.3d at 732-35 (holding that unchallenged administrative findings and supporting factual analysis at steps four and five conclusively demonstrated that challenged summary conclusion at step three was properly supported by factual analysis, and "[n]o reasonable factfinder could conclude otherwise").

## 2. Listing 12.05D

The ALJ discussed Listing 12.05D, so there is no error in this regard under *Clifton*, 79 F.3d at 1009-10. Rather, Mrs. Carpenter contends the ALJ improperly failed to tie his conclusion that she did not meet or equal Listing 12.05D to the evidence. *See Cruse*, 49 F.3d at 617. We agree.

"When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse*, 49 F.3d at 617; *see also* 20 C.F.R. § 416.920a(b)(1). This procedure requires the ALJ to "rate the degree of [the claimant's] functional limitation based on the extent to which [the claimant's mental] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). Previously, "[t]o record [his] conclusions, the [ALJ] . . . prepare[d] a standard document called a Psychiatric Review Technique Form (PRT form) that track[ed] the listing requirements and evaluate[d] the claimant under the [relevant] criteria." *Cruse*, 49 F.3d at 617. Now, he is only to "document application of the technique in the decision." 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

To satisfy Listing 12.05D, Mrs. Carpenter was required to demonstrate her low IQ and also show that her functionality is sufficiently impaired by it—that is,

that she is markedly impaired in two of the four criteria of the listing: (1) activities of daily living, (2) maintaining social functioning, (3) maintaining concentration, persistence, or pace, or (4) episodes of decompensation. (These criteria are *numbered* in Listing 12.05D, but the substance of the criteria is the same as in the paragraph "B" criteria of other listings for mental disorders. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A.)[1] The ALJ must rate the first three functional areas on a five-point scale—"[n]one, mild, moderate, marked, and

---

[1]   As is explained in § 12.00A:
    The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months. The listings for mental disorders are arranged in nine diagnostic categories: Organic mental disorders (12.02); schizophrenic, paranoid and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety-related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations).
        . . . .
        The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). . . . Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.
*Id.*

extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  He must rate the fourth functional area on a four-point number scale—"[n]one, one or two, three, four or more."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

Mrs. Carpenter argues that she is markedly limited in her activities of daily living, *see* Aplt. Opening Br. at 30, and markedly or extremely limited in social functioning, *see id.* at 31.  The ALJ found that Mrs. Carpenter has only mild limitations in these two areas.  Admin. R., Vol. 2, at 20.  He summarized the evidence from two mental health practitioners, but he failed to discuss all of the significantly probative evidence relevant to Mrs. Carpenter's mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence.  *See id.* at 18-20.

We are unable to determine how the ALJ arrived at his conclusion that Mrs. Carpenter is only mildly impaired in activities of daily living and social functioning.  The only piece of mental health evidence in the record that was created using the same five-point scale the ALJ was required to use is a PRT form prepared by Janice B. Smith, Ph.D., an agency consultant who reviewed Mrs. Carpenter's file.  *See* Admin. R., Vol. 3, at 448-53.  The ALJ did not discuss this evidence, *see id.*, Vol. 2 at 18-20, and it is clear that the ALJ did not rely on it as a basis for concluding that Mrs. Carpenter is only mildly impaired in activities of daily living and social functioning because Dr. Smith concluded that Mrs. Carpenter is moderately impaired in these areas.  *Compare id.* at 20 *with id.*,

Vol. 3, at 451. The evidence from the other mental health practitioners was not created using the five-point scale the ALJ was required to use, and the ALJ did not explain how he interpreted it to support his conclusions that Mrs. Carpenter's functionality in these two areas is only mildly limited.

The ALJ must evaluate "*all* relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1) (emphasis added). It is clear he did not do so. His discussion of the functional criteria under Listing 12.05D is, by itself, conclusory. *See* Admin. R., Vol. 2, at 20. He later adverted to some evidence which may be relevant to step three, however, when he found at step four that Mrs. Carpenter was not totally credible when she asserted she does not drive, read, do math, cook, or prepare meals.[2] *See id.* at 21. Nevertheless, the ALJ's discussion at step four is insufficient to supply the analysis missing from his step-three discussion. *Cf. Fischer-Ross*, 431 F.3d at 734 (holding that "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless[]" when findings elsewhere in decision, "coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings"). For example, the ALJ concluded that Mrs. Carpenter was not limited in her ability to read and do math, as she claimed,

---

[2] Mrs. Carpenter does not challenge on appeal the ALJ's adverse credibility determination at step four. *See* Aplt. Reply Br. at 10.

because she was fired from a previous cashier job when she took time off to have surgery, not because she could not do the job. Admin. R., Vol. 2, at 21. But, of course, there is no evidence in this record regarding how much math ability, if any, is required to operate a modern cash register. Moreover, William L. Cooper, Ph.D., a psychologist who examined Mrs. Carpenter, opined that she has "limited ability to read and calculate[,]" and "would not be able to manage her own funds independently." *Id.*, Vol. 3, at 446. The ALJ stated that he would not give Dr. Cooper's opinion controlling weight, because it was "a one time evaluation." *Id.*, Vol. 2, at 19. Appellant does not challenge that conclusion. But the ALJ "was still required to consider his opinion" in light of the other record evidence and the factors set out in the regulations, which the ALJ did not do. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(d), 416.927(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). Significantly, the ALJ's consideration of Mrs. Carpenter's credibility at step four did not require him to discuss the *degree* to which Mrs. Carpenter drives, cooks, etc., which is an essential concern at step three in this case. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). As a result, the brief discussion leading to the ALJ's adverse credibility determination does not show that Mrs. Carpenter is only mildly limited

-14-

in activities of daily living and social functioning for purposes of step three. *See* Admin. R., Vol. 2, at 21.

In sum, the ALJ failed to adequately discuss the evidence and tie his conclusions to the evidence. Consequently, his conclusion that Mrs. Carpenter does not meet or equal Listing 12.05D is based on legal error and must be reversed.

C. Step Five

Finally, the ALJ's analysis at step five where he determined that Mrs. Carpenter had the capability of performing other available work is undercut by his failure to discuss the evidence in Mrs. Carpenter's favor at preceding steps. A proper determination of the combined impact of her impairments on her ability to work underlies a proper finding of her mental and physical residual functional capacities, which is necessary to correctly phrase the ALJ's hypothetical questions to the VE.

We note for consideration on remand that Mrs. Carpenter correctly asserts the VE identified categories of jobs rather than specific jobs in the Dictionary of Occupational Titles (DOT), and neither the ALJ nor the VE considered all of the requirements of any particular job. The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit enough vocational evidence for this court to determine

whether there is a conflict. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999).

The judgment of the district court is REVERSED and the case is REMANDED with directions to REMAND to the agency for further proceedings.