FILED
United States Court of Appeals
Tenth Circuit

April 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARK BLAND,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

        Defendant-Appellee.

No. 10-3223
(D.C. No. 6:09-CV-01254-SAC)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Mark Bland appeals from a judgment of the district court affirming the

Commissioner's denial of his application for Supplemental Security Income

payments. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

§ 405(g), we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Bland was 48 years old at the time of his final hearing before an administrative law judge (ALJ). He completed the eleventh grade, and his past jobs include construction worker and material handler. In this, his fourth application, he asserts that he has been disabled since June 18, 2007, because of injuries to his arm, hand, and left foot; lower back problems; a learning disability; lack of concentration; seizures; and headaches. Mr. Bland was represented by counsel at the ALJ hearing. He and a vocational expert were the two witnesses.

In ruling on Mr. Bland's application, the ALJ applied the five-step sequential-evaluation process for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). He determined at step one that Mr. Bland had not engaged in substantial gainful activity since June 18, 2007. At step two he found that Mr. Bland had the following severe impairments: "mental deterioration, possibly substance/alcohol related, osteoarthritis of back and peripheral joints, peripheral neuropathy and history of seizure." Admin. R. at 20. At step three the ALJ considered whether Mr. Bland met several listings, including three for mental impairments, and determined that he did not. Central to Mr. Bland's claim on appeal, the ALJ did not evaluate whether he met Listing 12.05C. The ALJ then found at step four that Mr. Bland could not perform his past work, but determined at step five that he could perform other work that was available in significant numbers in the local and national

economies. Consequently, the ALJ concluded that Mr. Bland was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). The Appeals Council denied review, and the district court affirmed. On appeal to this court, Mr. Bland asserts that he meets or equals Listing 12.05C relating to mental retardation, 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.05 (Listing 12.05C), and that the ALJ erred by failing to consider this listing.

Mr. Bland was evaluated in August of 2007 by Dr. Robert Barnett, who diagnosed him with mild attention deficit disorder, and possibly a learning disorder and borderline intellectual functioning. Dr. Barnett stated that Mr. Bland "appears capable of simple work tasks and some complex tasks." Admin. R. at 241.

On July 17, 2008, Mr. Bland sought treatment at the Cowley County Mental Health & Counseling Center, stating that his mother thought he had Attention Deficit Hyperactivity Disorder. The initial diagnosis was major depression, learning disorder, difficulty concentrating, and a Global Assessment of Functioning (GAF) of 40.[1] Mr. Bland returned for therapy sessions on July 25,

---

[1]    A GAF rating indicates an individual's overall level of functioning. A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas," a GAF of 41 to 50 indicates "[s]erious symptoms" or "any serious impairment," and a GAF of 51-60 indicates "[m]oderate symptoms" or "moderate difficulty." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

August 5, August 13, and August 20, 2008. His depressive symptoms were relieved by Zoloft, and on August 13 and August 20 his prognosis was good and his GAF was 55.

On August 26, 2008, Julie Moreland, M.S., LMLP, also with the Cowley County Mental Health & Counseling Center, conducted a psychological evaluation of Mr. Bland. She reported the results of several psychological tests; among them was the WASI, which gave an IQ score of 67. Ms. Moreland also reported a GAF of 40.

## II. Discussion

Mr. Bland asserts that the ALJ was required at step three to evaluate whether he satisfied Listing 12.05C because of (1) the IQ test result of 67 provided by Ms. Moreland, and (2) the ALJ's finding at step two that he had severe physical impairments. "At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.920(a)(4)(iii) (claimant will be found disabled at step three if impairment meets or equals a listing and meets the duration requirement).

"In order to satisfy listing 12.05, a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." *Wall*, 561 F.3d at 1062 (ellipsis

-4-

and brackets omitted) (internal quotation marks omitted). The capsule definition states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05. Severity prong (C) of Listing 12.05 requires a showing of "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Wall*, 561 F.3d at 1062 (internal quotation marks omitted).[2]

Ordinarily, we review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether he applied the correct legal standards. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Here, however, the ALJ did not address Listing 12.05C, so we cannot employ the customary review process. Nevertheless, we find no error in the ALJ's decision because Mr. Bland's attorney affirmatively argued that he had a borderline IQ (rather than mental retardation), and the evidence did not require the ALJ to address Listing 12.05C sua sponte.

---

[2]     Listing 12.05C's requirement of a significant work-related limitation was satisfied by the ALJ's findings at step two that Mr. Bland has osteoarthritis, peripheral neuropathy, and a history of seizures. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[T]he decision regarding whether a claimant has a § 12.05C 'significant limitation' should closely parallel the step two standard, which is 'de minimis.'" (citation and internal quotation marks omitted)).

An ALJ generally may "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal quotation marks omitted). "Nothing justifies excusing [Mr. Bland's] counsel from this important duty here." *Wall*, 561 F.3d at 1062.

At the beginning of the hearing, Mr. Bland's attorney gave an opening statement describing her theory of the case. Relevant to mental capacity, she informed the ALJ that Mr. Bland had "a history of unskilled and semi-skilled work," which, according to Mr. Bland, was "performed at medium skill level." Admin. R. at 394. In addition, she said that Mr. Bland had a history of attention deficit disorder and had "some severe depression, difficulty concentrating[] and focusing on tasks at hand," and a "borderline IQ, which indicated that he may be learning disabled, or some difficulties with intellectual functioning." *Id.* The attorney did not mention, either in her opening or closing statements or in her questioning of Mr. Bland, mental retardation or deficits in adaptive functioning initially manifesting before age 22.

Two weeks after the ALJ hearing, counsel submitted Ms. Moreland's report. Counsel's cover letter noted that Ms. Moreland's testing had been conducted before the hearing but that counsel had previously received only "a brief summary of the testing results." *Id.* at 371. The letter said that Mr. Bland

-6-

was diagnosed with "Mild Mental Retardation (IQ of 67)"; but it did not mention Listing 12.05C or make any argument that the listing applied. *Id.*; *see* 20 C.F.R. § 416.1453(c)(2)(i) (contemplating submission of evidence and briefs as a reason for extending ALJ's deadline to issue a decision).

Not only did Mr. Bland's attorney fail to raise Listing 12.05C, but the evidence did not indicate that it must be considered. The only suggestive evidence was Ms. Moreland's report of an IQ score of 67. The report stated that his "strength was in hands-on activities. This score coincides with [Mr. Bland's] stating that school was too hard for him, thus dropping out." Admin. R. at 373. But the IQ score was hardly definitive. Ms. Moreland's report did not "comment on whether the IQ score[] [was] considered valid." 20 C.F.R. pt. 404, subpt. P, App. 1 § 12.00D.6.a (providing criteria for evaluating mental disorders). And the ALJ noted the 12-point discrepancy between the verbal and performance IQ scores, "a notation of exaggeration" in Ms. Moreland's report, *id.* at 24, 25, and Mr. Bland's having told Dr. Barnett that he dropped out of school to go to work.

Moreover, the ALJ observed that Ms. Moreland's findings concerning Mr. Bland's mental functioning conflicted with findings made at the same mental-health clinic earlier in the same month. In particular, Mr. Bland's GAF score of 40 was well below the prior score of 55. The ALJ found those earlier findings of higher functioning to be consistent with Dr. Barnett's prior assessment of "mild attention deficit disorder and consider lea[r]ning disorder or borderline

intellectual functioning with the ability to perform simple and some complex work tasks." *Id.* at 24. Also indicating higher mental functioning were Mr. Bland's abilities to handle the disability benefits for his mentally disabled spouse; to care for himself, his wife, and his home; and to watch television for several hours a day without concentration or memory problems. *Cf. Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (other evidence in the record may be relied on to determine whether IQ scores are valid).

Finally, the most obvious reason for the ALJ not to address Listing 12.05C (and perhaps the reason for counsel not to raise it) is the evidence contrary to the capsule definition of *mental retardation* in Listing 12.05: "Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.*" Listing 12.05 (emphasis added). Mr. Bland completed the 11th grade taking regular classes (although with low grades); he was never in special education classes at school. And he had a successful work history. From 1995 to 2001 he did unskilled work as a construction laborer, and from 1997 to 1999 he was a material handler, which is semiskilled work, inconsistent with mental retardation. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (upholding ALJ's determination that claimant's impairments did not meet listing for mental retardation based in part on her previous successful work at a semiskilled job for

more than two years). Mr. Bland asks us to presume from his IQ score of 67 that he must have been retarded before age 22. But even if we might adopt some form of presumption in other circumstances, his isolated score of 67 would not support a presumption, and Mr. Bland's school and work history would overcome a presumption in any event.

In sum, the evidence before the ALJ was far from sufficiently compelling to require the ALJ to address explicitly Listing 12.05C in the absence of a request by Mr. Bland's counsel.

### III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge