FILED
United States Court of Appeals
Tenth Circuit

September 9, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICHARD L. HAVENAR, III,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

Defendant-Appellee.

No. 10-5157
(D.C. No. 4:09-CV-00297-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES** and **ANDERSON**, Circuit Judges, **BRORBY**, Senior Circuit Judge.

In this social security case, Claimant Richard L. Havenar, III, appeals the denial of

his application for supplemental security income and disability insurance benefits based

on his low intellect and back problems. Mr. Havenar advances two claims on appeal:

1) an administrative law judge (ALJ) erred in evaluating whether his medical impairments

satisfy the criteria of listing 12.05C (mental retardation); and 2) the ALJ posed a

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

hypothetical question to a vocational expert (VE) that did not accurately reflect all of his mental limitations. We agree on both accounts and therefore reverse and remand for further proceedings.

## I. Background

Mr. Havenar claimed he became disabled on January 15, 2006, due to low intellectual functioning and chronic back pain. According to the record, he advanced through seventh grade in a special education curriculum, but dropped out of school due to difficulty reading and writing. He worked as a tire technician but injured his back stacking tires, and, in 2004, he underwent back surgery for a far lateral disc-herniation. The severity of his back condition is well-documented, but suffice it to say that his symptoms substantially improved after the surgery and then progressively deteriorated over time. Mr. Havenar eventually applied for benefits and, while his application was pending, he worked as a trash-truck driver earning $1,300.00 per month.

During the application process, Mr. Havenar was examined by a clinical psychologist, Dr. Denise LaGrand, who administered an intelligence test. The test results yielded a verbal IQ score of 70, a performance IQ of 75, and a full scale IQ of 70. Based on these scores, Dr. LaGrand determined that Mr. Havenar's cognitive functioning fell within the borderline intellectual functioning range, and "[the] results of the exam appear[ed] to be a valid estimate of his overall functioning." Aplt. App., Vol. 2 at 213. Hence, she concluded that Mr. Havenar's "ability to perform adequately in most job

2

situations, handle the stress of a work setting and deal with supervisors or co-workers" was "low to below average." *Id.* at 214.

Given this information, the ALJ determined at step five of the five-step sequential evaluation process, *see* 20 C.F.R. §§ 404.1520, 416.920; *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process), that Mr. Havenar was not disabled because he retained the residual functional capacity (RFC) to perform the full range of light work, subject to the following limitations: "a Verbal IQ of 70 and a Full Scale IQ of 70. He is limited to simple tasks that do not require reading and/or writing. The claimant has mild to moderate low back pain but can remain focused." Aplt. App., Vol. 2 at 16.[1] The Appeals Council denied review, and a magistrate judge, acting on the parties' consent, affirmed the Commissioner's decision. This appeal followed.

## II. Analysis

This court independently reviews the Commissioner's decision to ensure it is supported by substantial evidence and determine whether the correct legal standards were applied. *Wall*, 561 F.3d at 1052. "[W]e will not reweigh the evidence or retry the case," but we "examine the record as a whole, including anything that may undercut or detract

---

[1] The ALJ determined at step one that Mr. Havenar's work as a trash-truck driver constituted substantial gainful activity (SGA). *See* Aplt. App., Vol. 2 at 14. In his appellate brief, the Commissioner alludes to the ALJ's "alternate findings at steps two through five," *see* Aplee. Br. at 8 n.8, suggesting that the step-one finding was an alternate basis for denying benefits. This allusion fails to develop the argument and is incorrect in any event. The ALJ did not purport to deny benefits at step one, and, as a consequence, it would be improper to invoke this rationale as an alternative basis to affirm the denial of benefits. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted).

Mr. Havenar contends the ALJ erred in evaluating whether he satisfied the criteria of listing 12.05C at step three, and failing to pose an accurate hypothetical to the VE at step five. As discussed below, both contentions have merit.

A. Listing 12.05C

To satisfy listing 12.05, "a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." *Id.* at 1062 (alterations omitted). The relevant severity prong, subsection C, "requires a showing of a 'valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *Id.* (quoting listing 12.05C).

Mr. Havenar correctly points out that his low IQ scores of 70 fall within the presumptive range of listing 12.05C. *See Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997) (reciting range as "60 through 70").[2] He also correctly points out that his back

_____

[2]     The magistrate judge incorrectly found that Mr. Havenar's low IQ scores of 70 did *not* fall within the presumptive range because, under *Carpenter v. Astrue*, a claimant "must show 'a valid verbal, performance, or full scale IQ of 60 to 69 inclusive.'" 537 F.3d 1264, 1266 (10th Cir. 2008) (quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C). *Carpenter*, however, appears to misquote the listing based on previous regulatory language. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C (1990) (requiring "[a] valid verbal, performance, or full scale IQ of 60 to 69 inclusive"). We adhere to our prior precedent interpreting the listing to include within its presumptive range IQ scores of "60 through 70." *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996).

4

problems, which the ALJ found to be a severe impairment at step two, satisfy the de minimis standard for meeting the listing's significant limitation requirement. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (observing that the "significant limitation" standard closely parallels the de minimis standard of step two). Despite these circumstances, however, the ALJ found that Mr. Havenar did not meet or equal listing 12.05C. To explain his decision, the ALJ stated:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. In this case, *these requirements are not met because the claimant's IQ scores exceed the maximum allowed for meeting or equaling listing requirements by the absence of a physical or other mental impairment* imposing an additional and significant work-related limitation of function.

Aplt. App., Vol. 2 at 15 (emphasis added).

As Mr. Havenar suggests, this explanation is confusing at best. The emphasized text seems to condition Mr. Havenar's ability to satisfy the IQ requirement—regardless of a qualifying score—on the presence of another impairment. If so, the ALJ applied the wrong legal standard because there is no authority indicating that the criteria are conditional, and even if they are, Mr. Havenar clearly satisfied both. If, however, the ALJ meant something else, his explanation, whether by accident or design, is insufficient to permit meaningful review. *See Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) ("We must remand because we cannot meaningfully review the ALJ's determination . . . ." (quotation omitted)).

5

Despite its deficiencies, the Commissioner contends the ALJ's decision can be upheld based on Mr. Havenar's inability to satisfy the capsule definition of listing 12.05C. According to the capsule definition: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05. The problem with this argument is the ALJ never made any findings regarding the capsule definition, and it would be beyond the scope of appellate review to make such a finding in the first instance. Indeed, any such finding would be an impermissible post-hoc justification for the ALJ's deficient explanation. *See Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007). And in any event, neither party provided this court with the briefs filed in the district court, making it unknown whether the Commissioner preserved this argument for appeal. Under these circumstances, we remand to the Commissioner for a proper analysis and further explanation of the step-three decision.

B. Step-Five Hypothetical Question

Mr. Havenar also contends the ALJ omitted some of his mental limitations from the hypothetical question posed to the VE. In particular, he refers to the opinion of Dr. LaGrand, who believed his ability "to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low to below average." Aplt. App., Vol. 2 at 214. Mr. Havenar points out that the ALJ's hypothetical question only provided:

> [The hypothetical claimant] is able to work under routine supervision. He is able to complete a normal day and week, work week, from a mental standpoint and he could adapt to a work situation. He is able to relate adequately to the general public, coworkers, and supervisors for work related purposes.

*Id.* at 40. Mr. Havenar claims these provisions do not reflect with precision the limitations concerning coworkers, supervisors, and work-settings expressed in Dr. LaGrand's opinion. We agree.

It is well-settled that an ALJ's hypothetical question must accurately reflect all, but only, the limitations borne out by the record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The ALJ's hypothetical question provides no allowance for Mr. Havenar's limited ability to interact with supervisors and coworkers; instead, it assumes a hypothetical claimant with an adequate ability to relate to coworkers and supervisors with only routine supervision.

The Commissioner responds by directing the court to Dr. LaGrand's comment that Mr. Havenar could deal well with the public, an attribute that is reflected in the hypothetical. But that specific comment is different from Dr. LaGrand's conclusion that Mr. Havenar had "low to below average" ability to deal with coworkers and supervisors. And the ALJ's hypothetical says nothing to account for those limitations. Nor does it account for Mr. Havenar's difficulty handling work-related stress.

Nevertheless, the Commissioner also points out that the hypothetical is consistent with conclusions reached by two consulting physicians. To be sure, the ALJ was entitled to rely on the consulting physicians' opinions, *see* SSR 96-6p, 1996 WL 374180, at *1-2,

7

but neither doctor examined Mr. Havenar, and as a consequence, their opinions were entitled to less weight, *see* 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1).[3] Indeed, the ALJ presumably afforded Dr. LaGrand's opinion greater weight because he cited it in support of his RFC finding. *See* Aplt. App., Vol. 2 at 17 ("[T]he above residual functional capacity assessment is supported by the assessment[] of . . . Dr. LaGrand."). Yet the hypothetical question tracks the consulting doctors' opinions with no provision for the limitations expressed by Dr. LaGrand, and no explanation for their omission. Because the ALJ failed to account for these limitations or explain why the limitations were omitted, we remand to the Commissioner for proper analysis.

### III. Conclusion

The judgment of the district court is REVERSED, and the case is REMANDED with instructions to remand to the Commissioner for proper analysis consistent with this disposition. Mr. Havenar's request to proceed in forma pauperis is GRANTED, but his request for attorney's fees is DENIED.

Entered for the Court

Wade Brorby
Senior Circuit Judge

---

[3] The Commissioner correctly contends that this court may not reweigh the doctors' opinions, but that argument has no relevance here. The regulations require an ALJ to give greater weight to the opinion of an examining physician, such as Dr. LaGrand, than that of a non-examining physician, or explain why the examining physician's opinion is not entitled to more weight. There is no need to reweigh evidence simply to require an ALJ to properly analyze it.