FILED
United States Court of Appeals
Tenth Circuit

April 7, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CASSANDRA M. BELL,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, acting
Commissioner of Social Security
Administration,

     Defendant - Appellee.

No. 15-3161
(D.C. No. 6:13-CV-01310-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

     Cassandra Bell appeals from a district court order affirming the

Commissioner's decision denying her application for disability insurance benefits.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

**I**

     Bell applied for benefits in November 2009. After the administrative denial of

her claims, she received a hearing before an administrative law judge ("ALJ"), at

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

which Bell and a vocational expert testified.  After the hearing, the ALJ received interrogatory responses from a medical expert.  The ALJ found at step two of the five-step evaluation process, see Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007), that Bell had several severe impairments.  However, the ALJ further found that Bell had the residual functional capacity ("RFC") to perform light work subject to several limitations.  Based on her RFC, the ALJ found at step four that Bell was unable to perform her past relevant work.  At step five, the ALJ found that there were jobs in the national economy that Bell could perform and thus determined that Bell was not disabled.

The Appeals Council declined to review the ALJ's decision, the district court upheld the decision, and this appeal followed.  Bell contends the determination of non-disability must be reversed because the ALJ erroneously determined her RFC. She also contends the case should be remanded because of new and material evidence that did not exist at the time of the ALJ hearing.

## II

We review de novo the district court's ruling in a social security case and "independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence."  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation omitted).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).  To determine whether the substantiality test has been met, we meticulously

examine the record as a whole, but we do not reweigh the evidence or substitute our judgment for that of the ALJ. Id. at 1070-71.

We review for abuse of discretion the district court's denial of Bell's motion to remand the case based on new and material evidence. See Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010).

## A

Bell advances several arguments with respect to her RFC. First, she contends that the RFC determination fails to account for the ALJ's findings at step three that she often required assistance with personal hygiene, did not leave home independently, and had a marked limitation in her activities of daily living ("ADLs"). However, the evaluation of mental impairments at steps two and three of the evaluation process is analytically distinct from an RFC assessment. See 20 C.F.R. § 416.920a (describing the "special technique" for evaluating the severity of mental impairments). At these early steps of the process, the ALJ rates the degree of the claimant's impairment in four functional areas. See Wilson, 602 F.3d at 1141. These ratings "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . ." SSR 96-8p, 1996 WL 374184, at *4.

The ALJ followed the proper procedure by first applying the special technique to evaluate the severity of Bell's mental impairments, then separately assessing her RFC. Although the ALJ found that she had a marked restriction in her ADLs, the

3

ALJ also found that the "paragraph B" criteria were not satisfied. See generally

Carpenter v. Astrue, 537 F.3d 1264, 1268-69 (10th Cir. 2008). In assessing Bell's

RFC, the ALJ considered the extent to which her impairments limited her ability to

function. In the absence of objective medical evidence supporting her allegations of

disabling impairments, the ALJ proceeded to weigh the credibility of her statements

about the intensity, persistence, and limiting effects of her symptoms. See Luna v.

Bowen, 834 F.2d 161, 165 (10th Cir. 1987) ("The absence of an objective medical

basis which supports the degree of severity of subjective complaints alleged is just

one factor to be considered in evaluating the credibility of the testimony and

complaints." (quotation omitted)); see also SSR 96-7p, 1996 WL 374186, at *1

(adjudicator must carefully consider self reports of pain and all other evidence in

making credibility determination if objective evidence is not dispositive).

Guided by 20 C.F.R. § 404.1529(c) and the factors set forth in Social Security

Ruling 96-7p, the ALJ concluded that Bell's statements about the intensity,

persistence, and limiting effects of her symptoms were credible only to the extent that

she could perform light work with certain limitations. We reject Bell's contention

that this conclusion was precluded by the ALJ's determination at step three that she

had a "marked limitation" in her ADLs. Our review of disability cases requires us to

"consider whether the ALJ followed the specific rules of law that must be followed in

weighing particular types of evidence." Hackett v. Barnhart, 395 F.3d 1168, 1172

(10th Cir. 2005). We do not agree that an RFC to perform light work with limitations

is inherently incompatible with a "marked" limitation in just one of the four

4

functional limitations areas delineated in the special technique—particularly if the ALJ finds no limitations in the other three functional areas.  Bell has not shown the ALJ applied an incorrect legal standard.  See Lax, 489 F.3d at 1084.

Bell further argues that the ALJ failed to properly consider the psychological component of her physical symptoms when assessing her RFC and that the ALJ erred by minimizing her somatoform disorder.  The absence of objective medical findings alone cannot be used to rule out claims of disabling pain because "[s]omatoform disorders are characterized by physical complaints for which appropriate medical evaluation fails to reveal a physical pathology, or when such complaints, and any resulting impairment, is grossly in excess of what would be expected from a patient's diagnosis."  Wall, 561 F.3d at 1059 n.18.  However, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability."  Branum v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004) (quotation omitted).

In discussing Bell's diagnosis of a somatoform disorder, the ALJ considered a psychological assessment showing the absence of any psychiatric disorders, above-average memory function, and no difficulties with attention and concentration.  According to the assessment, Bell did not have any substantial cognitive difficulties and was not expected to have difficulty participating in a pain rehabilitation center program at the Mayo Clinic.  The ALJ also considered a psychiatric assessment, based in significant part on Bell's own reports about her condition, noting the absence of symptoms for several disorders.  And the ALJ considered  Bell's expressed reluctance to pursue certain approaches to her care and her failure to

5

follow up on recommended treatment options for her pain, such as a psychological and physical rehabilitative approach or seeing a psychiatrist.[1] We note further that the ALJ assigned less weight to one of the medical opinions in the record for the precise reason that it did not address Bell's somatoform disorder. In light of this discussion and analysis, Bell's contention that the ALJ completely overlooked her somatoform disorder in making the RFC determination is unavailing. Our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the ALJ. Wall, 561 F.3d at 1070.

Bell also argues that the ALJ erred by failing to take into consideration her fibromyalgia diagnosis. We disagree. "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." Branum, 385 F.3d at 1271. Although the diagnosis is mentioned in some of the medical records, the record supports the conclusion that it was encompassed within her later diagnosis for somatoform disorder. "[C]omplaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat, and the diagnoses themselves are often overlapping." Wilson, 602 F.3d at 1143. At the hearing before the ALJ, Bell did not mention her fibromyalgia. She

---

[1] To the extent Bell argues that her decision not to pursue treatment options was irrelevant, we disagree. An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7.

makes no showing that her fibromyalgia qualifies as a severe impairment. And she makes no argument or showing as to how the RFC determination in this case would have been different if the ALJ had listed fibromyalgia as a severe impairment.

Bell further contends that the ALJ erroneously evaluated her activities without considering the difficulties she had with them. Her argument that the ALJ ignored factors favorable to her credibility is closely related. We are persuaded by neither. Bell's purported difficulties with her ADLs were supported mostly by her own statements and testimony, which the ALJ found to be only partially credible for the reasons already discussed. See Wall, 561 F.3d at 1070 (having found claimant not fully credible, ALJ was permitted not to treat her testimony as strong evidence of her disability). An ALJ's credibility findings are entitled to special deference. White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001) (an ALJ "is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion").

Nor are we persuaded by Bell's arguments concerning the ALJ's characterization of some evidence. The ALJ's common-sense observation that many of her hobbies were sedentary activities does not constitute improper speculation. And it was not inaccurate for the ALJ to find that she was currently studying based on her testimony that she was still in school and had only four classes left to finish her degree. Further, the ALJ's finding that Bell did not have significant limitations in the areas of social functioning or sustained concentration or pace is consistent with evidence in the record, including medical opinions, and is not contradicted by her

7

role as a youth director at her church. There is substantial evidence to support the ALJ's conclusions, and to the extent Bell points out evidentiary conflicts in the record, they were for the ALJ to resolve. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1172 (10th Cir. 2012).

Factors favorable to her credibility that Bell contends were ignored by the ALJ include the difficulties she faced from a young age, her doctor's belief that her symptoms were real, her good work history, and her efforts to obtain relief by traveling to the Mayo Clinic. However, "[t]he ALJ is not required to discuss every piece of evidence." Wall, 561 F.3d at 1067 (quotation omitted). Assuming these factors are relevant, we decline to reweigh the evidence in this case or substitute our judgment for that of the ALJ. See Flaherty, 515 F.3d at 1070-71.

Bell claims that the ALJ evaluated erroneously several medical opinions in the case. These opinions are all addressed in the ALJ's detailed and thorough, sixteen-page decision. Bell's arguments to the contrary are underdeveloped and conclusory. In brief, we reject Bell's argument that Dr. Morparia's opinion[2] was not adequately considered because Bell fails to explain how that opinion is inconsistent with the ALJ's RFC assessment. The ALJ permissibly assigned little weight to the opinion of Dr. Fleming because he offered no specific functional limitations and very little rationale for his opinion. Dr. Netherton's opinion was given little weight because it lacked support in the record and was inconsistent with Dr. Netherton's own treatment

---

[2] Although Dr. Morparia is not mentioned by name in the ALJ's decision, it is clear that her examination is discussed at two different points in the decision based on the exhibit citation as well as the date, place, and type of examination.

8

notes. The ALJ noted that Dr. St. Louis' opinion was based in part on Bell's subjective reports about her symptoms, which the ALJ had already deemed not fully credible, and was not consistent with other evidence in the record. Dr. Rees' overall opinion was accorded some weight, but the ALJ was not persuaded by Dr. Rees' conclusion that Bell needed a chairlift for her basement stairs, finding that limitation was not supported by other evidence in the record. Finally, the ALJ did not err in giving substantial weight to Dr. Parsons' opinion that Bell had the capacity to perform the requirements for light work because it was consistent with the evidence as a whole. The ALJ did not rely exclusively on Dr. Parsons' opinion, but considered and gave substantial weight to two other medical opinions. We thus conclude that the ALJ appropriately considered and weighed the medical opinion evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004) (quotation omitted).

Lastly, we reject Bell's contention that the ALJ failed to consider the combined effect of her impairments. She has failed to support this contention with a developed argument. See Wall, 561 F.3d at 1065. Moreover, the ALJ's decision is based on a thorough review of the evidence in the record, including findings of nine severe impairments, and opinions and statements from more than a dozen doctors, specialists, and third-party reporters.

**B**

After the ALJ's decision was issued, Bell was diagnosed with Bechet's Syndrome and avascular necrosis. She argues that these diagnoses constitute new and material evidence warranting a remand under 42 U.S.C. § 405(g). We are not persuaded. In this context, evidence is material if the ALJ's decision "might reasonably have been different had the new evidence been before him when his decision was rendered." Wilson, 602 F.3d at 1148 (quotation omitted). However, Bell offers only mere speculation as to how these diagnoses are related to symptoms she experienced during the relevant time period. "[A] retrospective diagnosis without evidence of actual disability is insufficient." Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995) (quotation omitted). She does not point to any objective medical opinions connecting these diagnoses to her earlier symptoms. Although she suggests the diagnoses would have strengthened her credibility, she makes no argument as to how they could have changed the ALJ's RFC determination. Under these circumstances, the district court did not abuse its discretion by denying Bell's request to remand the case to the ALJ.

**III**

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

10