FILED
United States Court of Appeals
Tenth Circuit

January 3, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

TERESA D. THOMPSON,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

Defendant - Appellee.

No. 13-5064
(D.C. No. 4:11-CV-00730-FHM)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

Teresa D. Thompson appeals from the denial of her application for

supplemental security income ("SSI") benefits.  Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]After examining the briefs and appellate record, this panel has agreed
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Thompson filed for SSI benefits alleging disability due to fibromyalgia, allergies, depression, anxiety, headaches, and problems with her knees, back, shoulder, hips, thighs, and neck. She requested and received a hearing before an administrative law judge ("ALJ") at which she was represented by counsel. Thompson and a vocational expert ("VE") testified. The ALJ found that Thompson had severe impairments consisting of "problems with shortness of breath, due to allergies, knees, back, shoulder, neck, headaches, hips, thighs, and depression and anxiety." He then determined that Thompson could not perform her past relevant work, but that she could perform other jobs existing in substantial numbers in the national economy. The ALJ found that Thompson had the residual functional capacity ("RFC") to perform a limited range of light and sedentary exertional work as defined in the applicable regulations. He determined that she was "able to perform simple, repetitive and routine tasks and [was] slightly limited in reference to contact with the general public, co-workers and supervisors." Consequently, the ALJ denied benefits at step five of the five-step sequence for determining disability. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Appeals Council denied review and the district court affirmed.[1]

---

[1] The parties consented to proceed before a magistrate judge in the district court.

## II

We review the Commissioner's decision de novo, <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 731 (10th Cir. 2005), determining "whether it is free from legal error and supported by substantial evidence," <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1326 (10th Cir. 2011). Thompson advances three arguments on appeal: (1) the ALJ failed to conduct the required step-three analysis of her mental impairments, (2) the ALJ did not evaluate properly the medical-source evidence, and (3) the ALJ did not perform a proper determination at step five.

## A

Thompson argues that once the ALJ found at step two that she had the severe mental impairments of depression and anxiety, he was required at step three to evaluate those issues under the Listing of Impairments. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1. "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly." <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1268 (10th Cir. 2008) (quotation omitted). This procedure entails first evaluating the claimant's symptoms, signs, and laboratory findings. <u>See</u> 20 C.F.R. § 416.920a(b). Then the degree of functional limitation is rated in four broad areas, <u>id.</u> § 416.920a(c), which leads to a determination of the severity of the claimant's mental

- 3 -

impairments, id. § 416.920a(d).  The ALJ must "document application of the technique in the decision."  Carpenter, 537 F.3d at 1268 (quotation omitted).

Thompson does not point to evidence demonstrating that her mental impairments met a listing; rather, she contends that without documentation of the special technique, the ALJ's decision process is unreviewable.  She also argues that her mental limitations should have been included in the hypothetical questions posed to the VE.  She relies on Dr. Gordon's report describing her mental limitations.

The ALJ's decision does not document the required technique.  Nevertheless, the error was harmless because the ALJ's findings later in his analysis established that Thompson's mental impairments were not disabling.  See Fischer-Ross, 431 F.3d at 733-35 (remand to agency not required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review" and "[n]o reasonable factfinder could conclude otherwise").

In formulating Thompson's RFC, the ALJ adopted the mental limitations upon which Thompson relies on appeal.  The ALJ found that Thompson had "'mild' limitation in [her] abilit[ies] to carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with the general public, co-workers and supervisors."  She had "'moderate' limitation in [her] abilit[ies] to make judgments on complex work-related decisions and respond appropriately to usual work situations and to changes in a routine work setting; and 'marked' limitation in [her] ability to carry out complex instructions."  Accordingly, the ALJ

- 4 -

formulated an RFC that took these limitations into account by restricting her to jobs requiring "simple, repetitive and routine tasks and . . . limited . . . contact with the general public, co-workers and supervisors." If "we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

**B**

Thompson argues that the ALJ failed to give sufficient weight to the opinion of her primary caregiver, Robin Endres, an Advanced Registered Nurse Practitioner. She also claims that he failed to weigh the opinions of the consultative examiners and the non-examining, non-treating state agency reviewers. Nurse Endres found that Thompson tested positive for 12 of 18 tender points on a fibromyalgia test on July 22, 2009. On February 15, 2010, she completed a form indicating that Thompson's limitations precluded her from working. The ALJ noted that, as a nurse, Endres was not an "acceptable medical source." See 20 C.F.R. § 416.913(a) (listing acceptable medical sources). The ALJ also discussed the medical opinions of Dr. Gourd and Dr. Reddy, who are acceptable medical sources. Dr. Gourd examined Thompson on November 22, 2008, and found 2 out of 18 fibromyalgia tender points. Dr. Reddy examined her on April 12, 2010, and completed a Medical Source

Statement of Ability to do Work-Related Activities (Physical). Dr. Reddy indicated 8 of 18 fibromyalgia tender points.[2]

After considering Nurse Endres' opinion as required by 20 C.F.R. § 416.927(b), the ALJ properly afforded it no weight after observing that it was inconsistent with the opinions of the acceptable medical sources. See Keyes-Zachary, 695 F.3d at 1164 (ALJ is justified in relying on an opinion from an acceptable medical source over that from a nonacceptable medical source).

Thompson also alleges that the ALJ did not weigh the opinions of the consultative examiners, Dr. Gourd and Dr. Reddy. Although "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record [and to] discuss the weight he assigns to such opinions," id. at 1161, the failure to do so can be harmless, id. at 1163. If the ALJ's RFC is "generally consistent" with the findings in a medical opinion, or if the RFC is "more favorable" to the claimant than the opinion's findings, then "[t]here is no reason to believe that a further analysis or weighing of [the] opinion could advance [the claimant's] claim of disability." Id. In such a case, the error is harmless because the claimant cannot show prejudice stemming from the ALJ's failure to give greater weight to the opinion.

---

[2] Thompson also points to a score of 12 of 18 tender points for fibromyalgia found by Jean Barnard, M.D., which the ALJ did not discuss. But Dr. Barnard's findings were dated December 2, 2004, and in subsequent reports she noted only "[p]ossible" or "[q]uestionable" fibromyalgia. Dr. Barnard's later reports were consistent with the findings of Dr. Gourd and Dr. Reddy.

The Commissioner concedes that the ALJ should have assigned an explicit weight to the opinions of Dr. Gourd and Dr. Reddy but contends that the error was harmless. We agree. The ALJ's decision summarizes the opinions of Dr. Gourd and Dr. Reddy, and the RFC includes most of the limitations in those opinions. Although Thompson suggests that the ALJ should have weighted the favorable medical evidence more heavily, "we will not reweigh the evidence or substitute our judgment for the Commissioner's." Cowan v. Astrue, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

Thompson next asserts error in the ALJ's failure to discuss and weigh the reports of the state agency reviewers, Dr. Kampschaefer, Dr. Woodcock, Dr. Varghese, and Dr. Rees. Although she apparently concedes that these reports do not provide evidence of disability, she argues that a remand is necessary because they do not support the findings by the second physical consultative examiner and the mental consultative examiner. "In conducting our review, we should, indeed must, exercise common sense." Keyes-Zachary, 695 F.3d at 1166. A remand for the ALJ to weigh opinions that admittedly do not support a finding of disability would be futile.

## C

Thompson's final argument is that the hypothetical questions posed to the VE did not include all of her impairments, and thus could not support a step-five determination that she was able to work. She challenges the findings concerning her

abilities to stand/walk and reach, contending that the medical evidence showed that she could stand/walk for only four hours and had limited reaching ability. She further claims that the hypothetical questions did not include all of her mental limitations.

Thompson argues that she cannot do the "light" exertional jobs of mail clerk and sorter because "light" work requires six hours of standing or walking during an eight-hour workday. See SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). The hypothetical question and RFC assessment included an ability to stand/walk for six hours in an eight-hour workday at thirty-minute intervals. Thompson relies on Dr. Reddy's assessment that she could stand/walk for only four hours. But Dr. Reddy's assessment was based only on Thompson's complaints of "low back pain," not on any particular medical or clinical findings.

We recognize that the ALJ assessed back problems as a severe impairment at step two. But a step-two finding of a severe impairment

> does not require the ALJ to find at step five that the claimant did not
> have the residual functional capacity to do any work. After finding
> severe impairments, the ALJ still had the task of determining the extent
> to which those impairments, whether [physical] or mental impairments
> or both, restricted her ability to work.

Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007). Thompson's report to Dr. Reddy of disabling back pain appears to be at odds with her testimony that she could

- 8 -

perform various household tasks, including laundry, dusting, some cooking, and making her bed, although she could not sweep the floor. She was also able to drive a car for short trips.

Moreover, Dr. Reddy's examination showed no abnormal results, except for "complaints of pain to palpation in the cervical paraspinals, between the shoulder blades, both shoulders, posterior scalp and anterior thighs." Specifically, Dr. Reddy found that Thompson had full strength in upper and lower extremities, normal reflexes, no signs of thrombosis, normal nerve functioning, and no signs of abnormal carpal tunnel. In addition, Dr. Reddy assessed Thompson's ability to stand/walk continuously, while the ALJ specified standing/walking only at thirty-minute intervals.

The ALJ was not required to adopt Dr. Reddy's restrictions on standing and walking in formulating Thompson's RFC. "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (quotation omitted); see also 29 C.F.R. § 416.946(c) (ALJ is responsible for assessing RFC). Considering Dr. Reddy's statement that he limited Thompson's ability to stand and walk based on her allegations of pain, rather than on clinical findings, we discern no harmful error.

Thompson further asserts that none of the jobs identified by the VE as appropriate for her could accommodate the reaching restrictions stated by Dr. Reddy. Dr. Reddy indicated that Thompson could occasionally reach overhead with her right

hand and that she could perform all other right-handed reaching occasionally. Dr. Reddy opined that she could reach overhead frequently with her left hand and perform all other left-handed reaching occasionally. The ALJ's hypothetical question included an ability to occasionally reach overhead, a limitation consistent with Dr. Reddy's report. The VE identified several jobs existing in significant numbers in the regional and national economies within the hypothetical worker's abilities: mail clerk, sorting jobs, inspector/checker, and assembly jobs (with a fifty percent reduction due to the stated limitations). The ALJ confirmed with the VE that the jobs identified did not deviate from the job descriptions in the Dictionary of Occupational Titles ("DOT").

On appeal, Thompson has listed numerous DOT job numbers associated with unskilled light sorter jobs, claiming that all of them require reaching that Dr. Reddy said she cannot do. This court will not evaluate in the first instance whether a claimant is able to perform specific jobs. See, e.g., Raymond v. Astrue, 621 F.3d 1269, 1271 (10th Cir. 2009) (appellate court's review of agency's factual findings is limited to whether they are supported by substantial evidence in the record). More to the point, the VE testified that the jobs he identified were consistent with a hypothetical person with Thompson's impairments and the DOT. See Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009) (ALJ must inquire about and resolve any conflicts between the VE's testimony and a DOT job description).

Finally, Thompson asserts that the hypothetical question did not include the mental limitations noted by Dr. Gordon.  An ALJ's hypothetical questions to the VE "must include all (and only) those impairments borne out by the evidentiary record." Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).  The ALJ's hypothetical questions took into account Dr. Gordon's recommended limitations on contact with the public, coworkers, and supervisors.  Accordingly, we find no error in the ALJ's formulation of the hypothetical questions.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge