**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANIEL RACETTE,

     Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

     Defendant - Appellee.

No. 17-2130
(D.C. No. 1:16-CV-00277-GJF-WPL)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

    Daniel Racette appeals the district court's judgment upholding the denial of his application for disability benefits and supplemental security income. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse the denial of benefits and remand.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**

Racette applied for benefits in January 2012, asserting that he became disabled on February 15, 2010 as a result of an immune deficiency disorder called Common Variable Immune Deficiency ("CVID"). He was diagnosed with CVID in 2008 after experiencing recurrent pneumonia that required surgery to remove part of one lung and stitch the remainder to his chest wall. Beginning in 2008, Racette's CVID was treated by infusions of immunoglobulin. He takes medication to address side effects of this treatment, including fatigue, migraine headaches, nausea, and vomiting, along with medication for chronic chest-wall pain and cramping.

After Racette's applications were denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ"). Both Racette and a vocational expert testified at the hearing. An ALJ found that Racette was not disabled after applying the five-step sequential evaluation process used to assess social security disability claims. See 20 C.F.R. § 404.1520(a)(4).[1] The ALJ concluded that Racette had severe impairments of immunoglobulin deficiency and recurrent pneumonia, but determined that these impairments did not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). She found Racette had the residual functional capacity

---

[1] Unless otherwise noted, all C.F.R. citations in this decision are to the 2015 edition of 20 C.F.R. Part 404, which contains the relevant regulations for disability insurance benefits as they existed when the ALJ issued her decision. We have not included citations to the parallel provisions published in 20 C.F.R. Part 416, which apply to claims for supplemental security income.

2

("RFC") to perform sedentary work, except that he could never climb ladders, ropes, or scaffolds and should avoid frequent exposure to pulmonary irritants. She discounted opinion evidence provided by Dr. Richard Roche, Racette's treating physician, and Dr. Eligio Padilla, a consulting psychologist, as well as Racette's statements regarding his symptoms and limitations. Although Racette was not able to perform his past relevant work, the ALJ concluded he was able to perform other occupations with jobs existing in significant numbers in the national economy and therefore was not disabled.

The Appeals Council denied Racette's request for review, rendering the ALJ's decision the final decision of the Commissioner for purposes of judicial review. See 20 C.F.R. § 422.210(a). After the district court upheld the Commissioner's denial, Racette timely appealed.

**II**

We review the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. Chapo v. Astrue, 682 F.3d 1285, 1287 (10th Cir. 2012). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004) (quotation omitted). "In the course of our review, we may neither reweigh the evidence nor substitute our judgment for that of the agency." Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007) (quotation omitted). However, the agency's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that

3

appropriate legal principles have been followed is grounds for reversal." Jensen v.

Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005) (brackets and quotation omitted).

## A

A claimant is disabled if the Commissioner determines at step three that his

impairment meets or equals one of the presumptively disabling impairments included

in the Listing of Impairments. See § 404.1520(d); Sullivan v. Zebley, 493 U.S. 521,

532 (1990). In making this determination, the ALJ "was required to discuss the

evidence and explain why he found that [Racette] was not disabled at step three."

Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Racette argues that the ALJ

failed to comply with this requirement. We agree.

Racette asserts that his immune deficiency disorder meets the severity of

paragraphs A and C of Listing 14.07, Immune Deficiency Disorders, Excluding HIV

Infection.[2] See Listing of Impairments ¶ 14.07. Although the ALJ considered

Listing 14.07, she merely recited the listing's criteria (with a notable omission,

discussed below), and summarily concluded that the evidence failed to satisfy them.

The ALJ did not discuss relevant evidence or tie her step-three conclusion to that

evidence as required. See Clifton, 79 F.3d at 1009.

The Commissioner argues that the ALJ's findings elsewhere in her decision

supply the missing analysis. "[A]n ALJ's findings at other steps of the sequential

process may provide a proper basis for upholding a step three conclusion that a

---

[2] The parties agree that the side effects of treating an immune deficiency disorder are included in this listing. See Listing of Impairments ¶ 14.07G.

4

claimant's impairments do not meet or equal any listed impairment" if, based on the evidence the ALJ considered, "we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Fischer-Ross v. Barnhart, 431 F.3d 729, 733-34 (10th Cir. 2005) (quotation omitted). We cannot say that the ALJ's step-three legal error was harmless under this standard.

## 1

Listing 14.07A provides that a claimant is presumptively disabled if: (1) the claimant has an immune deficiency disorder (other than HIV) with (2) one or more of six listed infections, including pneumonia and sinusitis, that (3) "must either be resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period." Listing of Impairments ¶ 14.07A. The Commissioner argues Racette does not experience infections of sufficient severity to qualify under this listing. However, the ALJ found at step two that one of Racette's severe impairments was recurrent pneumonia, and noted later in her decision that Racette also had repeated episodes of sinusitis and other upper respiratory infections.[3] The ALJ apparently concluded at step three that these infections were not sufficiently severe to satisfy Listing 14.07A's additional criteria, but omitted from her statement the criterion that if a covered infection "require[s] hospitalization

---

[3] After finding that Racette suffered from recurrent pneumonia, the ALJ also considered at step three whether this impairment met or equaled the severity of Listing 3.02, Chronic Pulmonary Insufficiency. Racette does not challenge the ALJ's finding that his condition did not qualify under this listing.

5

or intravenous treatment three or more times in a 12-month period," it would qualify. Listing of Impairments ¶ 14.07A. There is no dispute that Racette received monthly or weekly immunoglobulin infusions. There is no indication in the ALJ's decision that she considered whether Racette's infusions meet this criterion. Nor can we say that any reasonable administrative factfinder, following the correct analysis, would have made this finding.

The Commissioner also argues that the ALJ's failure to consider this criterion was harmless because Racette received his weekly immunoglobulin infusions subcutaneously rather than intravenously starting in September 2010, and subcutaneous infusions do not match intravenous infusions in severity. These post hoc rationales cannot, however, protect a defective ALJ decision from reversal. Carpenter v. Astrue, 537 F.3d 1264, 1267 (10th Cir. 2008).[4] Accordingly, we reverse and remand for specific findings at step three regarding Listing 14.07A.

## 2

Under Listing 14.07C, a claimant is presumptively disabled if he has: (1) "[r]epeated manifestations of an immune deficiency disorder," with (2) "at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or

---

[4] The district court also relied on a post hoc rationale in upholding the ALJ's rejection of Listing 14.07A, reporting that it found no indication in the record that Racette's immunoglobulin infusions were prescribed to treat pneumonia. This rationale assumes that this criterion is not met unless the infusions are prescribed solely to treat an existing infection. This was a decision for the Commissioner, not a reviewing court, to make. See Carpenter, 537 F.3d at 1267; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004).

involuntary weight loss)," and (3) a "marked" limitation in "activities of daily living," "maintaining social function," or "completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."[5] Listing of Impairments ¶ 14.07C. Racette contends that his impairment meets these criteria based on severe fatigue and malaise, and marked limitation in his activities of daily living.

The Commissioner again argues that the ALJ's failure to discuss this evidence and explain her determination regarding Listing 14.07C was harmless because the ALJ found in her RFC assessment that Racette did not suffer from severe fatigue or marked limitation in his activities of daily living. But these findings relied on an adverse credibility finding, a determination that Racette challenges. Accordingly, we must consider whether the ALJ properly assessed Racette's credibility to determine whether the ALJ's step-three error regarding Listing 14.07C was harmless.

The ALJ found that although Racette's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, his allegations regarding the severity of these symptoms were "not fully credible." To support this finding, an ALJ must give "specific reasons." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[6] Further, "an ALJ's findings with respect to a claimant's credibility

---

[5] The Social Security regulations define "marked" limitation in this context to mean a degree of limitation in one or more activities that is "more than moderate but less than extreme" and "seriously interferes with your ability to function independently, appropriately, and effectively." Listing of Impairments ¶ 14.00I5.

[6] SSR 96-7p was in effect at the time of the ALJ's decision but has since been superseded by SSR 16-3p. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

7

should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hardman v. Barnhart, 362 F.3d 676, 678-79 (10th Cir. 2004) (quotation omitted). We conclude the ALJ failed to do so. As relevant to Listing 14.07C, the ALJ found that "the available evidence fails to support [Racette's] allegation of severe fatigue." However, she did not link this finding to particular evidence, instead relying on the reasons she did not find all of Racette's statements credible. These reasons are inadequate because they are either conclusory or based on misstatements and incomplete accounts of the record.

For example, the ALJ reported that she discredited Racette's account of his fatigue and other symptoms because Racette testified "that he stopped working as a dispatcher because the position was moved out of state and not because of his condition." But the record shows that this position ended approximately eighteen months before Racette's alleged disability onset date.[7] Racette further testified that he attempted to continue working in another position (as a check-in clerk) after his dispatcher job ended but that he had to leave that position early in 2010 because his condition prevented him from attending it consistently.

The ALJ also relied on an incomplete account of Racette's testimony and other statements regarding his ability to perform certain activities of daily living. She reported without qualification that Racette testified that "he could prepare meals, shop for groceries and monitor his children's homeschooling during the day," and

---

[7] The Commissioner also misstated the facts in her brief when she asserted that Racette continued to work as a dispatcher until 2010.

8

"was able to keep his area of the home clean and drive." In fact, Racette's testimony and his other statements in the record indicate that his ability to complete these tasks is severely limited by his disability. The ALJ erred in failing to include this evidence in her discussion, relying instead on an incomplete account of his statements. See Clifton, 79 F.3d at 1009-10.

In addition, the ALJ found Racette "reported that he was exercising on a regular basis." But Racette made this report to Dr. Roche in December 2009, before his alleged disability onset date. Racette stated in a 2012 Disability Report that he was no longer physically active as a result of his conditions. The ALJ did not address this additional evidence, point to any evidence after the alleged onset date, or otherwise explain how a report of regular exercise more than four years before his hearing testimony rendered Racette's testimony not fully credible.

The ALJ also summarily stated that Racette's statements were not fully credible because "treatment notes in the record do not sustain [his] allegations of a disabling condition," without linking this finding to substantial evidence.[8] As relevant to Listing 14.07C, Dr. Roche, Racette's treating physician, noted that Racette had been experiencing fatigue and other side effects of his treatments in August 2010, October 2011, January, March and October of 2012, and May 2014. The ALJ erred in failing to discuss the extent to which this evidence supported

_____

[8] Similarly, the ALJ did not refer to substantial evidence or otherwise explain her conclusion that "the objective medical evidence does not reasonably substantiate [Racette's] allegations about [the] intensity, persistence and functionally limiting effects of the symptoms."

9

Racette's account of his symptoms and limitations. See Clifton, 79 F.3d at 1009-10. Specifically, although the ALJ did refer to some of Dr. Roche's treatment notes in deciding to reject his opinion regarding Racette's ability to perform physical work-related activities, her account of them was incomplete. She did not, for example, report that Dr. Roche's assessment of Racette's conditions in March 2012 included "fatigue," or that the doctor reported later that year that Racette was "having severe fatigue when he gets [his immunoglobulin injections] still," indicating that "severe fatigue" was both a past and present concern. In addition, the ALJ incorrectly suggested that all of the relevant treatment notes report that Racette suffered at most "some fatigue." This too was error. See Frantz, 509 F.3d at 1302.[9]

The ALJ's findings in her RFC assessment do not cure her failure at step three to discuss the relevant evidence and explain why Racette's impairment did not meet Listing 14.07C's criteria of "severe fatigue." And in light of the errors in the ALJ's assessment of Racette's daily activities, we cannot confidently say that a reasonable administrative factfinder, following the correct analysis, would necessarily find that Racette does not have Listing 14.07C's criteria of marked limitation of activities of daily living. The ALJ's error regarding Listing 14.07C therefore was not harmless. Accordingly, this case must be remanded for the ALJ to set out specific findings at step

---

[9] In another post hoc argument, the Commissioner suggests Dr. Roche's failure to note fatigue or severe fatigue as one of Racette's symptoms in some treatment notes is substantial evidence supporting the ALJ's finding. The ALJ did not state this failure as a reason for her decision.

10

three regarding Listing 14.07C, as well as Listing 14.07A, and the reasons for accepting or rejecting evidence relevant to these findings.

## B

Our reversal and remand relates to step three. Nonetheless, we address Racette's arguments regarding the ALJ's RFC and step-five determinations in the event that the ALJ's analysis on remand proceeds beyond step three.

The ALJ was required to assess Racette's RFC based on all relevant evidence in the record. § 404.1545(a)(1). Racette argues that the ALJ failed to do so because she did not credit Racette's statements regarding his symptoms and limitations and improperly rejected medical opinion evidence from Dr. Roche and Dr. Padilla. We agree with the former argument: as discussed above, the ALJ's credibility finding did not comply with the relevant legal standards.[10] Because "the ALJ's credibility and RFC determinations are inherently intertwined," Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009), on remand the ALJ should reconsider and explain her credibility finding under the proper standards and factor this finding into her RFC assessment as appropriate.

---

[10] We do not decide Racette's additional argument that the ALJ erred in finding as part of her credibility assessment that Racette's chest pain and respiratory infections "were fairly well controlled with medication" and that there was "no evidence" of the severe nausea and vomiting he alleged. The ALJ did not discuss how the evidence supported these findings, and it is not clear to us whether or to what extent these findings were based on the ALJ's incomplete or erroneous accounts of Racette's daily activities, ability to exercise, and work history. We leave these additional arguments to be addressed, if necessary, by the ALJ on remand.

11

As to Racette's second argument, we find error with respect to the ALJ's treatment of Dr. Roche's treating physician opinion. We do not, however, find error in her treatment of Dr. Padilla's opinion. The ALJ effectively rejected Dr. Roche's opinion regarding Racette's physical limitations primarily based on her finding that the doctor's opinion was inconsistent with his treatment notes regarding Racette's fatigue.[11] As discussed above, the ALJ erred in relying on this finding.

In addition, consistency with the record as a whole is only one of the six regulatory factors the ALJ was required to consider in deciding the weight to give Dr. Roche's treating physician opinion. See § 404.1527(c). Although the ALJ was not required to apply every regulatory factor "expressly," Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ's reliance solely on the alleged inconsistency between Dr. Roche's treatment notes and his opinion at least raises a question about whether she considered the other regulatory factors. See § 404.1527(c)(2).[12] On remand the ALJ should provide "specific, legitimate reasons for rejecting" Dr. Roche's opinion in light of these factors, if she does so once again. See Chapo, 682 F.3d at 1291.

---

[11] The only other reason cited by the ALJ was that Dr. Roche's 2014 opinion that Racette could lift ten pounds occasionally was inconsistent with Racette's report in January 2012 that he was able to lift up to fifty pounds. Without more, it is not clear why this inconsistency justifies rejecting Dr. Roche's opinion as a whole, rather than simply giving less weight to his opinion regarding Racette's lifting limitations.

[12] Racette does not argue that Dr. Roche's opinion should have been given controlling weight pursuant to § 404.1527(c)(2).

12

Racette also asserts that the ALJ erred in rejecting Dr. Padilla's opinion that he was moderately limited in his ability to work without supervision and markedly limited in his ability to adapt to changes in the workplace, to be aware of normal hazards and react appropriately, and to use public transportation to travel to unfamiliar places.[13] The ALJ explained that she rejected these opinions because they were not consistent with the results of Dr. Padilla's mental status exam and with Racette's report that he had been able to start a new position as a dispatcher and did not stop working in that position due to his condition. Although the dispatcher evidence was taken out of context, the ALJ's finding that Dr. Padilla's exam results were inconsistent with his opinion is supported by the record. This internal inconsistency was a specific, legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Padilla's opinions. See Chapo, 682 F.3d at 1291.

Because the ALJ erred with respect to its assessment of Dr. Roche's opinions and Racette's credibility, her subsequent inquiry was defective. See id. at 1292. As a result, we do not address the rest of her analysis.

### III

For the foregoing reasons, we conclude that the ALJ failed to comply with relevant legal standards in determining whether Racette's impairments met the criteria of Listing 14.07A and 14.07C and in her consideration of Racette's statements and his

---

[13] Dr. Padilla also opined that Racette was mildly limited in several mental functions, but Racette does not argue that the ALJ erred with respect to these opinions.

treating physician's opinions in the RFC assessment.  We **REVERSE** the denial of benefits and **REMAND** this action to the district court with directions to **REMAND** it to the Commissioner for further proceedings consistent with this decision.

Entered for the Court


Carlos F. Lucero
Circuit Judge